Mitchell D. Schweitzer, J.
Defendant Jakubovitz moves to dismiss Indictment No. 1502-1962 on the ground that the testimony adduced before the Grand Jury fails to sustain the elements of the substantive crimes charged. Under this indictment defendant is charged with a series of counts alleging larceny by fraud, offering false or forged instruments to be filed, perjury first degree, and conspiracy to commit the aforesaid crimes.
The testimony before the Grand Jury indicates that Jakubovitz, as owner or manager of various rent controlled residential properties in Bronx County, submitted, for each apartment involved, an application for an increase in maximum rent pursuant to section 4 of the Emergency Housing Rent Control Act (L. 1946, ch. 274, as amd.) and section 33 of the State Rent and Eviction Regulations, which application, according to section 81 of the State Rent and Eviction Regulations, was required to be verified. A portion of said application, a form supplied and *332 required to be used by the Rent Commission, requested a description of and cost of the improvement, which improvement was the basis for the rental increase involved herein.
In response to this instruction, defendant falsely stated the expenditure for such improvement and, in accordance with the commission’s requirements of proof, proffered as evidence of such alleged expenditure, falsely inflated bills. It should be noted parenthetically that defendants Nissenbaum and Goldleaf, apparently the parties responsible for issuing the inflated bills, are not parties to this motion.
In conformance with the mandate of its enabling statute and the regulations governing such increases, the Rent Commission granted an increase in the maximum rent of the apartments involved. The amount of such increase was predicated upon, and directly proportional to, said false statements of expenditure. At a result thereof, each tenant involved was compelled to pay a higher maximum legal rent than he would have if the Rent Commission had not relied upon the false statement and inflated bills submitted by defendant Jakubovitz.
Indictments Nos. 1508-1962 and 1509-1962 also concern defendant Jakubovitz and the same fact pattern as Indictment No. 1502-1962 but with reference to different apartments.
Indictment No. 1548-1962 concerns the same fact pattern as Indictment No. 1502-1962, but under said indictment the moving defendants Langsam and Siegel are the landlords accused of essentially the same conduct and crimes as defendant Jakubovitz under Indictment No. 1502-1962.
All of these indictments are predicated upon the course of conduct, the general substance of which is recited above. It is reasoned that a larceny by fraud took place because tenants paid more rent than they would have been compelled to pay had the Rent Commission based its orders on proper bills. The charge of perjury is adduced from defendants Jakubovitz, Siegel, and Langsam having set forth the amount of the inflated bills in applications which the rent regulations required to be executed under oath. In arriving at a violation of section 2051 of the Penal Law, the only conceivable theory upon which this count can be based is that the applications and supporting bills were “ instruments ” within the meaning of that section. The conspiracy counts arise from the contention that the moving defendants conspired with defendants Nissenbaum, Goldleaf and Goldleaf Sales Corporation to commit the aforesaid crimes.
Defendants contend that these acts do not constitute a violation of any of the substantive crimes charged in the indictments. “It is axiomatic that statutes creating and defining crimes *333 cannot be extended by intendment, and that no act, hoAvever wrongful, can be punished under such a statute unless clearly within its terms ” (Todd v. United States, 158 U. S. 278, 282). Accordingly, the court has examined the testimony before the Grand Jury to determine the validity of such contention.
The essential element of the crime of perjury consists of the making of a false statement under oath. “ The charge of perjury cannot be sustained unless it be first proved * * * that the person charged took an oath in one of the forms recognized by laAv ” (People v. Gillette, 126 App. Div. 665, 668 [1st Dept.]). In O’Reilly v. People (86 N. Y. 154, 161-162), the Court of Appeals enunciated the oft-cited standard that, ‘1 To make a valid oath, for the falsity of Avhich perjury will lie, there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act, by Avhich the affiant consciously takes upon himself the obligation of an oath.”
Section 1621 of the Penal Law specifically states that the fact that the oath involved was defectively administered will not serve as a defense to the charge of perjury. However, this section does not obviate the necessity for some oath to have been taken (O’Reilly v. People, supra; People v. Goodheim, 188 App. Div. 148, 149; People v. Gillette, supra; People ex rel. Greene v. Swasey, 122 Misc. 388; Milmoe v. Meyer, 15 N. Y. S. 2d 899).
The inapplicability of section 1621 to situations where there is an absence of any proof of the conscious taking of an oath is further clarified in the language of People ex rel. Greene v. Swasey (supra) Avhen in discussing section 1621 of the Penal Law the court stated (p. 391): “ Such section applies only to cases Avhere some oath Avas administered, but administered in a manner defective in form. It does not create the obligation of an oath where it has not been consciously assumed in some form; it cannot cure that which never had life enough to be sick. ’ ’
In view of the foregoing, those counts alleging perjury in the first degree, which are predicated solely upon evidence of a verification and a certification, unbuttressed by any testimony indicating that an oath was undertaken, are deemed fatally defective. Accordingly, each count of perjury in Indictments Nos. 1502-1962, 1509-1962 and 1548-1962 is dismissed.
Conversely, this court deems valid each count of perjury in the first degree predicated upon proof of a verification, a certification, and upon testimony that an oath was consciously administered and taken. Measured by this standard of proof, the court denies that portion of the movant’s application addressed to Counts 17 and 21 of Indictment No. 1508-1962 and dismisses *334 all' other counts alleging perjury in the first degree in said indictment.
Examination of the Grand Jury minutes, with reference to the alleged crime of larceny hy false pretenses, indicated that the evidence fails to establish the essential elements of said crime. It is well established that the necessary components of this crime are intent, false pretense and reliance upon such false pretense by the party deprived of property (People v. Lobel, 298 N. Y. 243, 255; People v. Miller, 169 N. Y. 339, 351; People v. Williams, 135 Misc. 564, 565; People v. Cerrato, 99 Misc. 256; People v. Hart, 35 Misc. 182, 186). In order for a false allegation to sustain the charge of larceny by fraud, the statement involved must be one which compelled the person defrauded to act other than he would have, if he knew the statement to be false (People v. Miller, supra; People v. Hubbard, 10 A D 2d 735).
In the Hubbard case (supra), the defendant made false statements as to his marital status to the Department of Welfare of the City of New York. He was charged with larceny by fraud, based upon his receipt of welfare assistance under the application containing the false statements. The Appellate Division reversed this conviction and dismissed the indictment. The crux of the determination was the fact that defendant was eligible for welfare assistance whether or not he had made the false statements, and therefore the Welfare Department did not surrender any property or money in reliance upon the false allegation alleged.
In the instant cases, the false information alleged was submitted to the Temporary State Bent Commission. The individuals deprived of money thereby were the tenants who occupied apartments, with reference to which the State Bent Commission was induced to establish maximum rents based upon false information. While it must be assumed that if the Bent Commission had the correct information it would have established lower rents, the testimony fails to establish either directly, or by implication, that the tenants who wrongfully paid higher maximum rents, did so in reliance upon false statements made by defendants to the Bent Commission, or to them. Each of the tenants received an order adjusting his maximum legal rent. It was obedience to the mandate of the Bent Commission, and not reliance upon the statements of defendants, that governed the tenants’ conduct (Denkensohn v. Ridgeway Apts., 13 Misc 2d 389).
The evidence clearly indicates a complete absence of any person parting with any property in reliance upon a statement *335 made by defendants. This state of facts cannot sustain the charges of larceny by fraud. The counts charging each of the defendants Avith larceny by fraud must also be dismissed as insufficient in law.
The validity of the charges relating to the violations of section 2051 of the Penal Luav was disposed of in earlier decisions (see People v. 167th St. Holding Corp., N. Y. L. J., March 12, 1962, p. 16, col. 6; People v. Canal, N. Y. L. J., March 12, 1963, p. 16, col. 6). These decisions are equally applicable to the instant indictments, and all of these counts in each of the indictments are dismissed.
There remains for consideration the legal sufficiency of the counts alleging conspiracy and violation of subdivision 1 of section 580 of the Penal Luav. The crimes defendants purportedly conspired with others to commit being insufficiently established as a matter of law, the conspiracy counts based on defendants having conspired Avith others to commit these crimes are necessarily also without factual and legal support and are dismissed (People v. Levy, 283 App. Div. 383).
The testimony indicates that the basic course of conduct of defendants, in essence, devolves doAvn to a circumvention of the Emergency Housing Bent Control Law, by the submission to the Temporary State Housing Bent Commission of false information. The rent law involved constitutes an emergency measure, having its birth in the various emergency price control regulations promulgated by the Federal and State Governments during the Second World War. These regulations are necessarily statutory and have no basis in common law. From the inception of the Federal emergency price control regulations, individuals have engaged in a multiplicity of schemes to violate and evade these regulations. The goal of each of these schemes was to charge prices in excess of those permitted by the emergency regulations. Those who violated these regulations by submitting false information to the regulatory agency, or by charging excessive prices were uniformly prosecuted under the specific sections prohibiting such practices and not for collateral crimes derived from the common laAV (see Porter v. Warner Co., 328 U. S. 395; Porter v. Bledsoe, 159 F. 2d 495; United States v. Kraus & Bros., 149 F. 2d 773; Brown v. Mars, Inc., 135 F. 2d 843, cert. den. 320 U. S. 798).
To facilitate the enforcement of emergency rent control in this State, the New York State Legislature enacted section 11 of chapter 274 of the Laws of 1946, as amended, to punish those violating the State Emergency Housing Bent Control Luav. In conformity with section 11, the Legislature enacted subdivi *336 sion 10 of chapter 21 of the Laws of 1962 to deal with violations of the new Local Emergency Housing Bent Control Act. The latter law was created to permit the administration of local rent control by the City of New York. Similarly, the Legislature felt it necessary to enact section 965 of the Penal Law, making it a crime to accept a rent bonus.
The basic failure of the indictments herein exists from the attempt to prosecute apparent violations of the State Emergency Housing Bent Control Law as various collateral crimes. Therefore, Indictments Nos. 1502-1962, 1509-1962 and 1548-1962 are dismissed in their entirety, and all counts in Indictment No. 1508-1962 except Counts 17 and 21 are also dismissed as herein-above indicated. The aforesaid dispositions of each of the indictments are made with leave to the District Attorney, in the exercise of discretion, to resubmit the facts to a Grand Jury for the purpose of ascertaining if the filing of informations alleging violations of the State Emergency Housing Bent Control Law is justified.