OPINION OF THE COURT
Patrick J. Cunningham, J.
The Onondaga County District Attorney seeks an order of this court which will effectively define the jurisdiction of the September-October Onondaga County Grand Jury concerning a pending investigation.
The jurisdictional issue arises in this case due to the presence in Onondaga County of an Extraordinary Special and Trial Term of Supreme Court, Extraordinary Grand Juries, and a Special Prosecutor for Onondaga County, all of which were created in November, 1976 by Executive Orders Nos. 42 and 43 (9 NYCRR 3.42; 3.43) to deal with certain specific "unlawful acts or omissions”.
The afore-mentioned order provides that the powers of the District Attorney are to be superseded by those of the Special Prosecutor with respect to matters falling within the scope of that order. Accordingly, the Office of the Special Prosecutor has conducted exclusive investigations into the particular allegations of criminal activity contemplated at its inception. Those allegations apparently were reflected in recommendations of the Fourth April 1976 Grand Jury and reports of the District Attorney of New York County, both of which are cited in the enabling language of Executive Order No. 42 (9 NYCRR 3.42). Now, however, the Special Prosecutor is claiming superseding authority of the District Attorney with respect to alleged criminal conduct that occurred subsequent to the creation of his office, and involving what may be nothing more than a simple larceny over which the Special Prosecutor would lack jurisdiction. Because the District Attorney had been investigating the case since August of 1978, a very predictable conflict has arisen between the authority of the *215 two offices. The District Attorney claims that the conflict has seriously hampered his Grand Jury presentation and calls upon this court to order that his investigation proceed unencumbered.
The Special Prosecutor brings a cross motion seeking transfer of the application herein to the Extraordinary Special and Trial Term of the Supreme Court on jurisdictional grounds, or in the alternative on the basis that the court is prejudiced in this matter.
Turning first to the claim of prejudice, the Special Prosecutor has requested that the court disqualify itself from determining the instant motion on the ground that it is actually prejudiced against Special Deputy Attorney-General Andreoli or, at the very least, has given the public the appearance of being so prejudiced. In support of those allegations, the Special Prosecutor quotes portions of statements made by the court and includes, as exhibits, newspaper clippings publicizing such statements.
This court must respond by affirming its respect for the legal abilities of the Special Deputy Attorney-General and its belief that political corruption, in whatever form, should be investigated and duly prosecuted. This court is in no way prejudiced against the Special Prosecutor or his investigation. As to the argument that there may be an appearance of prejudice, the court is convinced that such is not the case, and notes that were it not for the violation of its express order that this proceeding be confidential and sealed from the public, "public appearances” would have no relevance whatsoever.
The court, therefore, declines to disqualify itself.
The Special Prosecutor also claims that the Extraordinary Special and Trial Term of the Supreme Court has exclusive jurisdiction to consider this application "pursuant to the mandate of Executive Order No. 43 and Judiciary Law 149 (2).” Subdivision 2 of section 149 of the Judiciary Law states: "A motion involving a matter pending before such extraordinary special or trial term shall be made returnable at such term, except that, in the exercise of discretion, a justice of the appellate division of the supreme court in the department in which such extraordinary special or trial term is being held may grant permission for such motion to be heard at a term of such appellate division.”
The Judiciary Law was amended so as to include the above- *216 quoted provision in 1953. A review of the legislative history behind the amendment indicates, however, that the object of the law was to prevent Judge shopping by defendants under indictment before extraordinary terms of the Supreme Court. According to information contained in the New York State Legislative Annual (1953, pp 479, 480) the amendment resulted from a crime commission report and recommendation which contained the following observation: " 'Nothing can more surely bring the administration of criminal justice into disrepute than the practice whereby defendants, against whom indictments have been returned at an extraordinary term of the Supreme Court, are permitted to litigate the validity of the indictments and other issues before judges of their own selection.’ ” (Emphasis supplied.)
Clearly, then, the law was meant to create exclusive jurisdiction in the Special Term only with respect to postindictment defense motions. Now, however, the Special Prosecutor would have this court read the law so broadly as to include within the exclusive jurisdiction of the Special Term all motions in any way arguably touching upon the Special Prosecutor’s field of authority. This court finds that there is no legal nor logical basis for such analysis.
It is also claimed that Executive Order No. 43 (9 NYCRR 3.43), which created the Extraordinary Special and Trial Term in Onondaga County, mandates a transfer to that court on jurisdictional grounds. However, there does not appear to be in that order any language creating jurisdiction in the Special Term with respect to the type of application before this court. The order merely confers nonexclusive jurisdiction in matters "within the scope of my executive order and requirement to the Attorney General, numbered forty-two”. However, even if the executive order had created exclusive jurisdiction as to those matters falling within the scope of Executive Order No. 42, there would have to be a finding that the case involved such a matter before the exclusive jurisdiction would come into play. A motion addressed to that underlying question could not itself be subject to such exclusive jurisdiction.
For the above reasons, this court finds that it is not precluded, either by law or executive order, from examining the application herein. Accordingly, the Special Prosecutor’s cross motion to vacate the order to show cause signed by this court, and to transfer the matter to the Special Term, is hereby denied in all respects.
*217 It should be noted that this court has merely refused to recognize the exclusive jurisdiction of the Special Term to determine the propriety of a given investigation. There is no question that the Special Term, as empaneler of the Special Grand Jury, has jurisdiction concurrent with the Onondaga County Court, as empaneler of the Onondaga County Grand Jury to hear motions and issue orders involving conflicts between the two Grand Juries.
With respect to the merits of this application, the supporting affidavits of both the Assistant Special Prosecutor and the Assistant District Attorney include several allegations pertaining to the underlying facts in the disputed case in an attempt to show that the alleged criminal activity does, or does not, fit the following language: "arising out of, relating to, or in any way connected with the offer, payment, acceptance or solicitation of funds or other consideration in connection with the obtaining or retaining of public employment or public office, or with the obtaining or retaining of any contract or other benefit from a public employee, public officer, public agency or the State or any of its political subdivisions”. (Executive Order No. 42, 9 NYCRR 3.42.)
However, this court finds that it is unnecessary to consider those arguments or the above-quoted language, because Executive Order No. 42 clearly indicates that the Special Prosecutor’s authority is first and foremost limited by the enabling clause of that order (9 NYCRR 3.42), which reads: "Pursuant to article IV section three of the Constitution of the State of New York, the provisions of subdivision two of section 63 of the Executive Law and the statutes and law in such case made and provided, and in view of the recommendation of the Fourth April 1976 Grand Jury and the Reports submitted by the District Attorney of New York County”. (Emphasis supplied.) It is clear, therefore, that the Special Prosecutor’s authority is restricted to alleged criminal activity initiated prior to the cited "recommendation” and "reports” or, if occurring "hereafter”, must be clearly connected and arising out of that earlier activity.
All of the evidence before this court indicates that the alleged unlawful acts under investigation in this case occurred between the months of March and August of 1978, which time frame is coextensive with the target’s public employment. Therefore, it is impossible to perceive a connection, either in subject matter or in point of time, between this investigation *218 and the report and recommendations under which Executive Order No. 42 was promulgated. Accordingly, it must be held that the District Attorney’s authority has not been superseded by the Special Prosecutor with respect to that alleged criminal activity and he must be allowed to proceed with his investigation unencumbered by any further action based upon a claim to the contrary.
Parenthetically, the court notes that its holding has desirable practical consequences in that it obviates the necessity of determining jurisdictional conflicts by means of an extensive analysis of the underlying facts such as was attempted in this case. That is, during the preliminary stages of an investigation such factual determination may well be impossible due to the paucity of information available and the fact that any claims as to what further investigation may uncover are, of necessity, speculative. In this case, for instance, the court would have been hard pressed to decide, with any degree of certainty, which prosecutorial agency involved had jurisdiction based upon an analysis of whether the alleged criminal activity was "bribery” or "larceny”.
It is equally impractical to assume that continued resort to judicial interpretation involving an analysis of the exact nature of the criminal activity would provide a workable answer. It could only be expected that the number of such conflicts would grow if the Special Prosecutor were authorized to investigate newly arisen criminal activity, and the necessary motions would, therefore, require totally unacceptable expenditures of court time and public funds. Moreover, attendant fact-finding procedures could well prejudice ongoing investigations regardless of the ultimate jurisdictional determination.
Finally, it must be noted that this court does not mean by its holding today to imply any lack of faith in the ability and inclination of the two prosecutorial offices to co-operate whenever possible. As a matter of fact, the Special Prosecutor has made several creditable efforts in that direction with respect to the case before us. However, such co-operative efforts are themselves difficult to administer, and can in no way ensure the "unencumbered investigation” to which each prosecutor is entitled within the scope of his respective authority.
This court should also point out that the position taken by the Special Prosecutor in the afore-mentioned letters is totally inappropriate in light of the court’s holding that the subject *219 investigation does not fall within the scope of his authority in the first instance.