OPINION OF THE COURT

Per Curiam.

The order of the Appellate Division should be affirmed, without costs.
The record reveals no proof to support the Human Rights Division’s finding that the respondents, New York Roadrunners Club and its president, Fred Lebow, discriminated against the disabled in violation of section 296 (subd 2, par [a]) of the Executive Law (Human Rights Law) when, in organizing and promoting the 1978 New York City Marathon, it required participants to use only their feet, and not wheelchairs, skateboards, bicycles or other extraneous aids. Indeed, as the Appellate Division pointed out, so long as entrants met this qualification, as well as some others the propriety of which are unchallenged, any disabilities unrelated to the capacity to move on foot would rule out no prospective contestant.
*126 What the respondents had decided to conduct was not just any kind of marathon race, but a marathon footrace, a traditionally and, in any case, because of its label as a marathon, an historically rooted athletic event. No doubt it might have been possible for the club to have laid down guidelines which would have opened the race to individuals who used any means of locomotion, or one which would have allowed only those who used means other, than their feet to participate. But the club, a private, though not-for-profit, organization, without more was under no legal compulsion to follow any of these alternatives. Standing alone, its election to adhere to the method of locomotion most intrinsic and conventional to what, at all odds, is planned as a foot racing event cannot be catalogued as blameworthy in a Human Rights Law discriminatory sense. In setting the standards for the race, in this perspective it also was a valid consideration for the club to take into account the fact that a uniform requirement that the race be run on foot would tend to equalize competition. Equally valid was its concern that, without a uniform rule, it would make it difficult, if not impossible, to objectively evaluate the relative performances of the competitors.
In making these observations, we, of course, are not insensitive to the role athletic activity may play in the rehabilitation and in the lives of the handicapped. Nor do we depart from our appreciation of the special concerns committed to the expertise of the Human Rights Division to combat discrimination in the first instance (State Off. of Drug Servs. v State Human Rights Appeal Bd., 48 NY2d 276, 283-284). Rather, we simply hold that, under the circumstances, the acts on which the complaint here was posited did not constitute an unlawful discriminatory practice.
Finally, because of the ground on which we affirm, we note that we have had no occasion to reach or decide either the issue of safety or the question as to whether the marathon course was a “‘place of public accommodation’” (see Executive Law, §292, subd 9) or the legal significance, if any, of the failure of the city to have withdrawn its permit once the respondents had rejected its request that wheels be allowed.